# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:10CV618-RJC-DSC

| | |
|---|---|
| LAWRENCE V. BERKOVICH and KE DING BERKOVICH, ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | **MEMORANDUM AND RECOMMENDATION** |
| THE VUE-NORTH CAROLINA, LLC, ) ) ) ) | |
| Defendant. ) ) | |

**THIS MATTER** is before the Court on Plaintiffs' "Motion for Partial Judgment on the Pleadings" (document #8) and the parties' associated briefs and exhibits. See docket entries ## 8, 11 and 12.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and the subject Motion is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Plaintiffs' Motion be granted as to Defendant's counterclaim for specific performance and denied in all other respects, as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 16, 2008, the parties entered into a Purchase and Sale Agreement (the "Agreement"), whereby Plaintiffs agreed to purchase Unit 5102 of The VUE Charlotte Condominium (the "Unit") from Defendant for a purchase price of $1.283 million. The Agreement identifies the Unit and sets forth what the legal description of the Unit will be upon completion of The VUE Charlotte Condominium.

A Property Report, a copy of which is attached to Plaintiffs' Amended Complaint as Exhibit 4, was provided to Plaintiffs before they entered the Agreement. It explains that the Agreement's legal description of the Unit is in future as opposed to present tense. The Agreement further provides that "the Unit and the Condominium are described in greater detail in the Public Offering Statement, the draft Declaration, and in the exhibits attached to both (all together the 'Condominium Documents')," and Sections 1 and 35 of the Agreement expressly incorporate the provisions of the Condominium Documents. Plaintiffs acknowledge receiving the Public Offering Statement.

The Public Offering Statement contains a section describing the "Principal Address of Condominium," which states, "The numbered street address of the Condominium has yet to be determined; however, the Condominium will be physically located at the intersections of West 5th Street and Pine Street and West 6th Street and Pine Street, Charlotte, North Carolina." Additionally, the Public Offering Statement included the preliminary plat and plans.

The Agreement, Paragraph 13, provides that in case of default by Plaintiffs, Defendant's sole remedy is to keep the purchaser's earnest money as liquidated damages:

> If Purchaser is still in Default twenty (20) days after receipt from Seller of written notice thereof, Seller may declare this Agreement terminated and may retain all Deposits, as liquidated and agreed upon damages which Seller shall be deemed to have sustained and suffered as a result of such Default; provided, however, in no event shall the amount of the Deposits retained by Seller exceed fifteen percent (15%) of the purchase price, exclusive of interest, or the amount of Seller's actual damages, whichever is greater. To the extent that the Deposits exceed such amount, such excess shall be returned to Purchaser. Upon such termination, the parties hereto will be released and relieved from all obligations hereunder. The provisions herein contained for liquidated and agreed upon damages are bona fide provisions for such and are not a penalty, the parties understanding and agreeing that Seller will have sustained damages if a Default occurs, which damages will be substantial but will not be capable of determination with mathematical precision and therefore, the provision for liquidated and agreed upon damages has been incorporated in this Agreement, as a provision beneficial to both parties. Upon Purchaser's Default and termination by Seller of this Agreement pursuant to this section 13, all of Purchaser's rights under this Agreement shall cease and Seller may sell or hold the Unit without any

accounting or further notification to Purchaser.

In contrast, Plaintiff is given both legal and equitable remedies:

If Seller is still in default ten (10) days after Purchaser sends Seller notice thereof (or such longer time as may reasonably be necessary to cure the default if same cannot be reasonably cured within ten (10) days, Purchaser will have such rights as may be available in equity and/or under applicable law.

Similarly, the Property Report states as follows:

If you default (such as failing to close) we will give you written notification of your default and you will have twenty (20) days from receipt of the notice to cure the default. If you do not cure the default we may retain your deposit not to exceed fifteen percent (15%) of the purchase price exclusive of interest, as liquidated and agreed upon damages for your default.

The first page of the Agreement provides, "YOU HAVE THE OPTION TO CANCEL YOUR CONTRACT OR AGREEMENT OF SALE BY NOTICE TO THE SELLER BY MIDNIGHT OF THE SEVENTH DAY FOLLOWING THE SIGNING OF THE CONTRACT OR AGREEMENT." It is undisputed that Plaintiffs did not cancel the Agreement on or before midnight on December 23, 2008. Instead, on October 18, 2010, Plaintiffs attempted to cancel the Agreement by letter sent by certified mail, return receipt requested. Defendant received Plaintiff's letter on October 22, 2010.

On December 2, 2010, Plaintiffs filed this action seeking, inter alia, a declaration that they effectively terminated the Agreement and are entitled to recover their earnest money deposit. In its Counterclaim, Defendant seeks specific performance of the Agreement and/or damages arising from Plaintiffs' breach.

On April 21, 2011, Plaintiffs filed their "Motion for Partial Judgment on the Pleadings" in which they seek a judgment that Defendant is prohibited from seeking specific performance and that Plaintiffs timely exercised their termination rights under the Interstate Land Sales Act, 15 U.S.C.

§ 1701, et. seq. ("ILSA"). Plaintiffs' Motion has been fully briefed and is, therefore, ripe for disposition.

## II. DISCUSSION

### A. Standard of Review

Although a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is separate and distinct from a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the distinction is one without a difference [because federal courts] apply[] the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6)." Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). Accord Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) ("viewing the Defendants' motion as a Rule 12(c) motion does not have a practical effect upon our review, because we review the district court's dismissal de novo and in doing so apply the standard for a Rule 12(b)(6) motion").

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. 129 S. Ct. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1951 (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true), (citing Twombly, 550 U.S. at 554-55). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

B. **Counterclaim for Specific Performance**

Construction of a contract is a matter of law for the Court. Norkunas v. HP Hospitality, LLC, No. 1:10cv95, 2010 WL 4922990, at *5 (W.D.N.C. Nov. 29, 2010). "When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court . . . and the court cannot look beyond the terms of the contract to determine the intentions of the parties." Lynn v. Lynn, 689 S.E.2d 198, 205 (N.C. App. 2010), rev. denied, 705 S.E.2d 736 (2010) (quoting Piedmont Bank & Trust Co. v. Stevenson, 339 S.E.2d 49, 52 (N.C. App. 1986)). "[T]he purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument." Id. (quoting Carolina Power & Light Co. v. Bowman, 51 S.E.2d 191, 199 (N.C.1949)).

As the Supreme Court of North Carolina has stated, "the court, under the guise of construction, cannot reject what the parties inserted or insert what the parties elected to omit." Weyerhaeuser Company v. Carolina Power & Light Company, 127 S.E.2d 529, 541 (N.C. 1962). "Courts do not make contracts," the court has also said. ". . . 'Ordinarily, when parties are on equal footing, competent to contract, enter into an agreement on a lawful subject, and do so fairly and honorably, the law does not permit inquiry as to whether the contract was good or bad, whether it was wise or foolish.'" Knutton v. Cofield, 160 S.E.2d 29, 36 (N.C. 1968) (quoting Roberson v. Williams, 83 S.E.2d 811, 814 (N.C. 1954)).

"[T]he law favors a liquidation of the damages by the parties themselves." Knutton, 160 S.E.2d at 34. Where a valid liquidated damages provision applies, the party seeking liquidated damages does not have to prove the amount of the damages, and where the parties agree on liquidated damages, damages will be awarded in the event of a breach, even if no damage at all was suffered. Id. "[T]he burden falls on the party seeking to invalidate a liquidated damages provision."

Seven Seventeen HB Charlotte Corporation v. Shrine Bowl of the Carolinas, Inc., 641 S.E.2d 711, 714 (N.C. App. 2007).

In a state court case between Defendant and another purchaser who refused to complete the transaction, Superior Court Judge Lane Williamson recently held that the identical liquidated damages clause is enforceable and dismissed Defendant's counterclaim for specific performance. See Jafari v. The Vue-Charlotte, LLC and the Vue North Carolina, LLC, Mecklenburg County File No.10 CVS 17943, Order on Motion for Partial Summary Judgment, entered April 19, 2011.

Applying these legal principles to the facts alleged in this case, the Court finds that the liquidated damages clause in the parties' Agreement is valid and enforceable. Accordingly, Defendant does not have a valid counterclaim for specific performance. The Court respectfully recommends that Plaintiffs' Motion for Partial Judgment on the Pleadings be granted as to that counterclaim.

### C. Claim for Contract Rescission

The Interstate Land Securities Act, 15 U.S.C. § 1701 et seq. ("ILSA") was enacted "to protect unsuspecting and ill-informed investors from buying undesirable land" by requiring developers to provide prospective purchasers with the information they need to fully understand what they are buying. Long v. Merrifield Town Center L.P., 611 F.3d 240, 245 (4th Cir. 2010). ILSA, together with regulations enacted by the Secretary of Housing and Urban Development ("HUD"), make it unlawful for a developer to use the mail or other instruments of interstate commerce to sell certain property, unless the property has been registered with HUD and the buyer has been provided a "property report" prior to signing a purchase agreement. See 15 U.S.C. §§ 1702, 1703, 1705, 1707; 24 C.F.R. §§ 1710.105-118. There is no dispute that Defendant properly

registered the project with HUD and that purchasers, including Plaintiffs, were provided with a Property Report prior to signing the Purchase Agreement.

ILSA also affords purchasers a two-year right to terminate a contract for the sale of a lot (or condominium unit) in a registered project if the contract does not contain, among other things, "a description of the lot which makes such lot <u>clearly identifiable</u> and which is in a <u>form</u> acceptable for recording by the appropriate public official responsible for maintaining land records in the jurisdiction in which the lot is located." <u>Id.</u> § 1703(d) (emphasis added). Similarly, HUD regulations provide the buyer a two-year right of revocation if the contract does not include a "legally sufficient and recordable lot description." 24 C.F.R. §§ 1710.105(d)(2)(i) and 1710.105(d)(2)(iii)(A). If the contract does not contain an adequate description of the lot, the developer must disclose the two-year right to revoke the agreement. 24 C.F.R. § 1710.105(d)(2)(iv).

Plaintiffs argue they are entitled to a two-year right to rescind the Agreement because: (1) the legal description of the unit was insufficient; and (2) the Agreement itself was not recordable.

Under North Carolina law "a property description is legally sufficient if it supplies the means to identify a specific parcel of land." <u>In re Walker</u>, No. 03-13204C-7G, 2007 WL 1575062, at *1 (Bankr. M.D.N.C. Apr. 27, 2007) (citing <u>Foreman v. Sholl</u>, 439 S.E.2d 169, 173 (N.C. App.1994) and <u>Overton v. Boyce</u>, 221 S.E.2d 347, 349 (N.C. 1976)); <u>see also</u> N.C. Gen. Stat. § 47C-2-104 ("[a] description of a condominium unit which . . . complies with the general requirements of the laws of this State concerning description of real property is sufficient legal description of that unit.").

The Agreement specified Plaintiffs were buying Unit 5102 and contained a floor plan for that unit initialed by Plaintiffs. In addition, the Public Offering Statement contained a section describing the "Principal Address of Condominium," which states, "The numbered street address of the Condominium has yet to be determined; however, the Condominium will be physically located at

8

the intersections of West 5th Street and Pine Street and West 6th Street and Pine Street, Charlotte, North Carolina." The Public Offering Statement also included the Legal Description of the Condominium Property, and a full set of the preliminary plat and plans.

Plaintiffs' argument that the legal description in the Agreement violated ILSA was recently rejected by another federal court in a case dealing with state law and contract language virtually identical to that in this case. See Taplett v. TRG Oasis (Tower Two), Ltd., L.P., 755 F. Supp. 2d 1197, 1205 (M.D. Fla. 2009). In Taplett, the contract provided the name of the development and the designation of the specific unit to be purchased, and acknowledged that a proposed declaration of condominium had been provided to the buyers and would be filed later. The condominium purchaser argued this failed to satisfy ILSA § 1703(d)(1)'s requirement for a lot description in recordable form because it lacked the declaration's recording data required by Florida law. Id. The Court rejected this argument, concluding that "[t]o penalize a developer for giving the entire document rather than a mere identifying reference (required so that the same document could be found) would be absurd" and dismissed the ILSA claim. Id.

Turning to Plaintiffs' second argument that the contract itself was not in recordable form, ILSA does not require recordation of sales contracts nor does it disallow sales contracts which are not in a form sufficient to permit recording. Rather, as discussed above, ILSA requires that the unit description be in recordable form. The applicable North Carolina statute requires that a description of a condominium unit must either (1) include the name of the condominium, recording information for the declaration of condominium, and identifying number of the unit; or (2) comply with other general legal description requirements such as metes and bounds. N.C. Gen. Stat. § 47C-2-104.

The parties disagree whether the notices provided by Defendant in the Purchase Agreement, Property Report and Public Offering Statement comply with these requirements. In support of their

9

argument, Plaintiffs point only to Bacolitsas v. 86th & 3rd Owner, LLC, No. 09 Civ. 7158 (PKC), 2010 WL 3734088 (S.D.N.Y. Sept. 21, 2010) which is not controlling authority. Moreover, that decision is presently on appeal to the Second Circuit Court of Appeals, and HUD has filed an amicus brief urging its reversal.

The undersigned concludes that at this early point in the proceedings and construing the allegations of the pleadings in the light most favorable to the nonmoving party, Plaintiff has failed to establish its right to contract rescission under ILSA. Accordingly, the Court respectfully recommends that Plaintiff's Motion for Partial Judgment on the Pleadings be denied as to their contract rescission claim.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiffs' "Motion for Partial Judgment on the Pleadings" (document #8) be **GRANTED IN PART** and **DENIED IN PART**, that is, **GRANTED** as to Defendant's counterclaim for specific performance and that counterclaim be **DISMISSED WITH PREJUDICE**, and **DENIED** in all other respects.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);

Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989).  Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED.**

Signed: June 28, 2011

David S. Cayer
United States Magistrate Judge