UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-cv-618-RJC-DSC

| LAWRENCE V. BERKOVICH and KE | ) |
| DING BERKOVICH, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| THE VUE-NORTH CAROLINA, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** comes before the Court on Plaintiffs Lawrence V. Berkovich and Ke Ding Berkovich's ("Plaintiffs") Motion for Partial Judgment on the Pleadings, (Doc. No. 8), and the Magistrate Judge's Memorandum and Recommendation ("M&R"), recommending that this Court grant in part and deny in part Plaintiffs' motion, (Doc. No. 13).

**I.  STANDARD OF REVIEW**

The district court has authority to assign dispositive pretrial matters pending before the court to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(B). The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Similarly, de novo review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id.

In deciding a Rule 12(c) motion for judgment on the pleadings, "the Court should apply the same standard as when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." Morris v. Hennon & Brown Props., LLC, No. 1:07-cv-780, 2008 WL 2704292, at *3 (M.D.N.C. July 3, 2008) (citing Burbach Broadcasting Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002)). In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs, Inc. v. Matakari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## II.  BACKGROUND

Plaintiffs moved for partial judgment on the pleadings in the form of a declaratory judgment holding that: (1) Plaintiffs had two years from the date they executed a contract of sale in which to cancel the agreement; (2) Plaintiffs validly cancelled the agreement such that they are entitled to the return of their earnest money; and (3) Defendant the Vue-North Carolina, LLC's ("Defendant") counterclaim for specific performance is invalid. (Doc. No. 8). Plaintiffs also moved for a judgment in the amount of the earnest money. (Id.). The Magistrate Judge

2

recommended that this Court grant Plaintiffs' motion with respect to Defendant's counterclaim for specific performance, but deny the remainder of Plaintiffs' motion. (Doc. No. 13). Both parties timely objected to the M&R. (Doc. Nos. 14; 15). Defendant objected to the Magistrate Judge's factual finding that the contract's liquidated damages provision limited Defendant's sole remedy in the event of Plaintiffs' default to keeping Plaintiffs' deposit. (Doc. No. 15 at 1). The Court finds that the parties' agreement does not define the liquidated damages provision as Defendants' "sole" remedy, but that it is the only remedy referred to in the agreement. (Doc. No. 1-1 at 8).

The parties' do not object to the remainder of the Magistrate Judge's factual history of the case. Therefore, the Court adopts it as its own. (Doc. No. 13 at 1-4).

## III. ANALYSIS

The Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. § 1701 et seq.,

> is designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers. The Act is based on the full disclosure provisions and philosophy of the Securities Act of 1933 . . . which it resembles in many respects. Section 1703 of the Disclosure Act makes it unlawful for the developer of a covered subdivision "to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails . . . to sell or lease any lot unless a printed property report . . . has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee."

Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla., 426 U.S. 776, 778-79 (1976). Section 1703(d) provides that

> [a]ny contract or agreement which is for the sale or lease of a lot not exempt under section 1702 of this title and which does not provide a description of the lot which makes such lot clearly identifiable and which is in a form acceptable for recording by the appropriate public official responsible for maintaining land records in the jurisdiction in which the lot is located . . . may be revoked at the option of the purchaser or lessee for two years from the date of the signing of

such contract or agreement.

On December 16, 2008, Plaintiffs and Defendant executed a contract for the sale of a penthouse unit in the condominium building that Defendant planned to construct. (Doc. Nos. 4-1 at 21; 5 at 2). This sale is governed by ILSFDA. Although ILSFDA is phrased in terms of subdivisions and lots, it applies to condominiums as well. See Ndeh v. Midtown Alexandria, LLC, No. 07-1639, 2008 WL 4934502, at *1 (4th Cir Nov. 18, 2008). Defendant used means of communication in interstate commerce to sell Plaintiffs a condominium unit. (Doc. Nos. 4 at 3; 5 at 3); see also 15 U.S.C. § 1703(a). Defendant had not yet built its condominium and the project did not qualify for any of ILSFDA's exemptions. See 15 U.S.C. § 1702.[1] Defendant also admitted in its answer that its condominium "was registered with the U.S. Department of Housing and Urban Development [("HUD")] as required by [ILSFDA]." (Doc. No. 5 at 3).

On October 18, 2010, Plaintiffs sent Defendant a "Notice of Cancellation of Contract." (Doc. Nos. 4-2; 5 at 3). Plaintiffs purported to invoke ILSFDA's two year revocation option. (Doc. No. 4-2). Plaintiffs argued that the parties' contract did "not provide a description of the lot which makes such lot clearly identifiable and which is in a form acceptable for recording," 15 U.S.C. § 1703(d). (Doc. No. 4-2). Plaintiffs argued that the legal description was not recordable because (1) the parties' signatures were not notarized, (Id. at 2 citing N.C. GEN. STAT. § 47-17); and (2) it did not "include any physical location, . . . refer to any plat or plan, any particular declaration of condominiums, any metes and bounds, or prior deed reference," (Id.). The

---

[1] The parties' contract did not require Defendant to complete construction of the condominium building for three years. (Doc. No. 4-1 at 5); see 15 U.S.C. § 1702(a)(2) (exempting from ILSFDA only those condominium sales where the sales contract obligated the developer to complete the building within two years).

Magistrate Judge found that "at this early point in the proceedings," Plaintiffs had failed to establish their right to contract rescission under ILSFDA. (Doc. No. 13 at 10). Plaintiffs objected to the Magistrate Judge's recommendations. (Doc. No. 14).

Plaintiffs' first justification fails. Plaintiffs argue that the parties' contract was not in a form acceptable for recording to satisfy section 1703(d). But it is the description of the lot, and not the contract itself, that must be in recordable form. See 15 U.S.C. § 1703(d) (granting revocation right where contract "does not provide a description of the lot . . . which is in a form acceptable for recording"); 24 C.F.R. § 1710.105(d)(2)(iii)(A) (to avoid revocation right, contracts must include "[a] legally sufficient and recordable lot description"); (Doc. No. 11-17: The Department of Housing and Urban Development's amicus curiae brief in Bacolitsas v. 86th & 3rd Owner, LLC, 10-4229, 2011 WL 770951, at 5-8). Even if the Court were to find section 1703(d)'s statement of what must be in a "form acceptable for recording" ambiguous, the Court would still find against Plaintiffs. Where "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc., 467 U.S. 837, 843 (1984). "[L]egislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. at 844. Congress tasked HUD with issuing regulations implementing ILSFDA. 15 U.S.C. §§ 1715, 1718. HUD enacted 24 C.F.R. § 1710.105 under this authority. 24 C.F.R. § 1710.105(d)(2)(iii)(A) lists "[a] legally sufficient and recordable lot description" among the contract provisions required to prevent the purchaser from obtaining a two year revocation right. Under Chevron, the Court must defer to this even clearer directive. Further, HUD filed an amicus brief attacking the Southern District of

New York's judgment in favor of a condominium purchaser in Bacolitsas v. 86th & 3rd Owner, LLC, No. 09-cv-7158, 2010 WL 3734088 (S.D.N.Y. Sept. 21, 2010). The court found that because the purchaser could not record his actual purchase contract, he had two years within which to revoke. Id. at *5-6. HUD argued that 15 U.S.C. § 1703(d) only required the description to be in recordable form, and not the contract itself. (Doc. No. 11-17). An agency litigation position is worthy of some deference, albeit less than that due a regulation, so long as it is not a "'*post hoc* rationalization,' advanced by an agency seeking to defend past agency action against attack." Auer v. Robbins, 519 U.S. 452, 462 (1997); see also Skidmore v. Swift & Co., 323 U.S. 134, 139-40 (1944) ("rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance"); Shipbuilders Council of Am. v. U.S. Coast Guard, 578 F.3d 234, 242 (4th Cir. 2009). HUD was not a party in Bacolitsas and its position is worthy of this Court's deference. For these reasons, this Court holds that it is the description of the lot, and not the contract itself, that must be in recordable form.

Plaintiffs' second argument in favor of their purported two year revocation right stands on a firmer foundation. Plaintiffs assert that the contract's legal description itself is not in recordable form. As discussed above, 15 U.S.C. § 1703(d) requires this description to be "in a form acceptable for recording by the appropriate public official responsible for maintaining land records in the jurisdiction in which the lot is located" in order to prevent the purchaser from obtaining a right to revoke the contract for two years. North Carolina law requires a legal description of a condominium to include "the name of the condominium, the recording data for the declaration, and the identifying number for the unit" or it must "otherwise compl[y] with the

6

general requirements of the laws of [North Carolina] concerning description of real property.

N.C. GEN. STAT. § 47C-2-104. Here, the contract provided that:

> [t]he legal description of the Unit will be:
>
> BEING all of that Unit 5102 of the VUE Charlotte, a Condominium, as described in the Declaration of Condominium of the VUE Charlotte, a Condominium (the "Declaration"), recorded in Book ___ Page ___ in the Office of the Register of Deeds for Mecklenburg County, North Carolina, as shown on the plat and plans for the Condominium recorded in Unit File No. ___ in the Office of the Register of Deeds for Mecklenburg County, North Carolina; TOGETHER with the percentage interest in the Common Elements appurtenant to said Unit, as set forth in the Declaration.

(Doc. Nos. 1-1 at 3; 5 at 4) (blanks in original). This description does not reference the condominium declaration's recording data as specified by North Carolina law. N.C. GEN. STAT. § 47C-2-104. It is also could not "otherwise comply" with North Carolina recording requirements because the unit did not yet legally exist. See id.

Before any condominium unit is recorded, the developer must record a "declaration" that legally establishes the condominium building and all the units within it. N.C. GEN. STAT. § 47C-2-101; see also id. cmts. 2 & 3. But this declaration "may not be recorded unless all structural components and mechanical systems of all buildings containing or comprising any units thereby created are substantially completed." N.C. GEN. STAT. § 47C-2-101(b). Defendant's condominium building was not yet complete and Defendant did not promise construction would be completed until December 2011. (Doc. Nos. 4-1 at 5; 5 at 2). Thus, the unit Defendant sold Plaintiffs had not yet come into legal, or factual, existence and no description could be recorded. Defendant acknowledges that the description was not yet recordable and that Plaintiffs' unit had not yet come into legal existence. (Doc. No. 11 at 6-8). Defendant stresses that it provided Plaintiffs with what the recordable legal description "will be" and provided other "considerable

7

detail set forth in the Agreement and Condominium Document regarding the location of the condominium and the Unit." (Doc. No. 11 at 6-8). Defendant argues that this should be enough. (Id.).

But ILSFDA's plain text provides otherwise. The legal description in the parties' contract did not contain the recording data for the condominium's declaration and did not "otherwise compl[y] with the general requirements of the laws of [North Carolina] concerning description of real property," N.C. GEN. STAT. § 47C-2-104. Thus, the projected legal description was "not in a form acceptable for recording by the appropriate public official responsible for maintaining land records in the jurisdiction in which the lot is located." See 15 U.S.C. § 1703(d)(1). Section 1703(d) allows the purchaser two years to revoke the contract in this situation. 15 U.S.C. § 1703(d).

Defendant argues that "it would be 'nonsensical' to interpret [ILSFDA and its implementing regulations] in such a way as to render [pre-construction condominium] sales impermissible." (Doc. No. 11 at 7). Defendant points to 24 C.F.R. § 1710.109(g)(1)(ii) to show that ILSFDA and HUD expressly allow sales where the legal description of the property is not recordable. (Doc. No. 11 at 7). The regulation provides that if the description is inadequate, the seller must "include a statement to the effect that the description of the lots is not legally adequate for the conveyance of the lots and that it will not be until the plat is recorded." 24 C.F.R. § 1710.109(g)(1)(ii). But the permissibility of pre-construction condominium sales is not at issue. The issue is whether such a sale triggers a two year revocation right. Section 1703's text provides that it does where the developer cannot provide a description of the property "in a form acceptable for recording." 15 U.S.C. § 1703(d).

In Taplett v. TRG Oasis (Tower Two), LTD., the court held that the purchaser did not

detail set forth in the Agreement and Condominium Document regarding the location of the condominium and the Unit." (Doc. No. 11 at 6-8). Defendant argues that this should be enough. (Id.).

But ILSFDA's plain text provides otherwise. The legal description in the parties' contract did not contain the recording data for the condominium's declaration and did not "otherwise compl[y] with the general requirements of the laws of [North Carolina] concerning description of real property," N.C. GEN. STAT. § 47C-2-104. Thus, the projected legal description was "not in a form acceptable for recording by the appropriate public official responsible for maintaining land records in the jurisdiction in which the lot is located." See 15 U.S.C. § 1703(d)(1). Section 1703(d) allows the purchaser two years to revoke the contract in this situation. 15 U.S.C. § 1703(d).

Defendant argues that "it would be 'nonsensical' to interpret [ILSFDA and its implementing regulations] in such a way as to render [pre-construction condominium] sales impermissible." (Doc. No. 11 at 7). Defendant points to 24 C.F.R. § 1710.109(g)(1)(ii) to show that ILSFDA and HUD expressly allow sales where the legal description of the property is not recordable. (Doc. No. 11 at 7). The regulation provides that if the description is inadequate, the seller must "include a statement to the effect that the description of the lots is not legally adequate for the conveyance of the lots and that it will not be until the plat is recorded." 24 C.F.R. § 1710.109(g)(1)(ii). But the permissibility of pre-construction condominium sales is not at issue. The issue is whether such a sale triggers a two year revocation right. Section 1703's text provides that it does where the developer cannot provide a description of the property "in a form acceptable for recording." 15 U.S.C. § 1703(d).

In Taplett v. TRG Oasis (Tower Two), LTD., the court held that the purchaser did not

have a revocation right even though the developer did not provide a recordable property description. 755 F. Supp. 2d 1197, 1205 (M.D. Fla. Apr. 30, 2009). Like this case, the developer had not yet filed the condominium's declaration, and thus could not deliver a property description that included the declaration's recording data. Id. But the court found the developer had provided the purchaser so much other information, including the proposed declaration, that the statute's requirement was excused. Id. "To penalize a developer for giving the entire document rather than a mere identifying reference (required so that the same document could be found) would be absurd." Id. The court noted that ILSFDA's "focus is preventing fraud through the disclosure of pertinent information." Id. But this statement is incomplete. ILSFDA "is designed to prevent false and deceptive practices in the sale of unimproved tracts of land," Flint Ridge, 426 U.S. at 778, through the provision of a recordable legal description in the parties' contract for sale, 15 U.S.C. § 1703(d)(1). It is not for this Court to replace this particular protection Congress put in place with one the Court might find superior. Cf. Crawford v. Washington, 541 U.S. 36, 67 (2004) ("The Constitution prescribes a procedure for determining the reliability of testimony in criminal trials, and we, no less than the state courts, lack authority to replace it with one of our own devising").

A contract of sale without a recordable legal description is permissible, but Congress provided purchasers with a right to revoke the contract for two years to guard against any possible fraud. Congress added this provision to ILSFDA in 1979 to "assure that contracts or agreements contain legally sufficient and recordable description of the boundaries of the lot so that purchasers may publicly record and thus protect their interests in their lots." H.R. REP. 96-154 at 30, reprinted in 1979 U.S.C.C.A.N. 2317, 2353. Plaintiffs could not record their interest "and thus protect their interests in their lot[]." Id. Recording provides an especially important

9

protection in North Carolina, one of the few states with a pure race statute.[2] See N.C. GEN. STAT. § 47-18(a). No amount of other information can remove the need for this protection that Congress wanted purchasers to have. Where this protection is unavailable, section 1703 instead gives purchasers a right to revoke the sales contract for a period of two years. 15 U.S.C. § 1703(d).

Defendant is correct that it does not deserve to be "penalized" for its failure to include a recordable legal description in the parties' contract of sale, see Taplett, 755 F. Supp. 2d at 1205, especially when it appears that North Carolina law makes such a thing impossible, see N.C. GEN. STAT. § 47C-2-101(b) (barring developers from recording a condominium declaration until construction is substantially completed); N.C. GEN. STAT. § 47C-2-104 (requiring, *inter alia*, the recording data for the declaration in order to record a condominium unit). But equally, Plaintiffs are entitled to the prophylactic measure Congress granted purchasers deprived of a recordable legal description. Plaintiffs were entitled to revoke their sales contract at any time within two years of the date it was executed.

They exercised this option on October 18, 2010. (Doc. Nos. 1-2; 5 at 3). Plaintiffs' "Notice of Cancellation of Contract" clearly communicated their intent to cancel "the contract to purchase unit 5102 in the Vue-Charlotte, executed on December 16, 2008." (Id.). It included signed authorizations from Plaintiffs' attorney and themselves. (Id.). Plaintiffs sent the notice

---

[2] A developer could resell the purchaser's unit and that new buyer could prevail over the original purchaser if they were able to record first, once the declaration was filed. While this may be a remote possibility, there is a less extreme problem that could arise. The parties' contract allowed Defendant to grant a third party a deed of trust on Plaintiffs' unit in exchange for development financing. (Doc. No. 1-1 at 4-5). These lenders would likely record their interests once the declaration was filed. Defendant was contractually obligated to discharge any such lien at closing, but without the ability for Plaintiffs to record their interest, Plaintiffs would be at a severe disadvantage in any priority dispute that might arise. (Id.).

by certified mail and have attached their return receipt to the complaint, showing that Defendant received the notice on October 22, 2010. (Doc. No. 1-3). ILSFDA does not require any specific elements of a purchaser's revocation. 15 U.S.C. § 1703(d). The Court finds Plaintiffs' notice sufficient. Plaintiffs validly invoked their right to revoke the parties' sales contract.

ILSFDA also entitles purchasers "to all money paid by him or her under such contract or agreement." 15 U.S.C. § 1703(e). Thus, Defendant must repay Plaintiffs' deposit of $145,485. (Doc. Nos. 4 at 2; 5 at 2, 6; 1-1 at 3). Plaintiffs' Motion for Partial Judgment on the Pleadings, (Doc. No. 8), is **GRANTED** with respect to their right to revoke their contract and recoup their deposit.

Defendant objected to the Magistrate Judge's recommendation that it was not entitled to specific performance. (Doc. No. 15). But the Court need not reach the issue of Defendant's remedy for Plaintiffs' breach because Plaintiffs validly revoked the contract. The Court **DISMISSES as moot** Defendant's objection and that portion of Plaintiffs' motion which requested a declaration that such a remedy was unavailable. Defendant's counterclaims for specific performance, and alternatively, breach of contract, (Doc. No. 5 at 7), are also **DISMISSED as moot**.

## IV. CONCLUSION

Plaintiffs validly revoked the parties' sales contract and Defendant must return Plaintiffs' $145,485 deposit.

Plaintiffs also asserted claims for: (1) breach of contract based on Defendant's alleged material changes to the unit and condominium complex, (2) ILSFDA damages for making untrue and misleading statements, and (3) unfair and deceptive trade practices. Plaintiffs did not move for judgment on the pleadings regarding these counts. Because these counts may entitle Plaintiff

to additional damages, they are not moot and this case continues.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Partial Judgment on the Pleadings, (Doc. No. 8), is **GRANTED IN PART AND DISMISSED AS MOOT IN PART**;

2. The clerk shall enter judgment against Defendant in the amount of $145,485; and

3. Defendant's counterclaims for specific performance, and alternatively, breach of contract, (Doc. No. 5 at 7), are **DISMISSED as moot**.

Signed: October 23, 2011

Robert J. Conrad, Jr.
Chief United States District Judge